[No. 17989.   Department Two.   June 30, 1923.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE
TURNER, *Appellant.*[1]

BURGLARY (19)—CRIMINAL LAW (183)—EVIDENCE—SUFFICIENCY—
IDENTITY. The identity of accused, charged with burglary of a shoe
store, is sufficiently established by evidence of police officers, who
came upon him as he was leaving the place, trailed him in a devious
course, finding shoes on the way, and arrested him with white
marks on his clothing, evidently from the walls of the shoe store at
the place of his exit.

Appeal from a judgment of the superior court for
King county, Brinker, J., entered February 20, 1923,
upon a trial and conviction of burglary.   Affirmed.

*E. F. Kienstra,* for appellant.

*Malcolm Douglas* and *Chester A. Batchelor,* for re-
spondent.

PARKER, J.—The defendant, Turner, was charged in
the superior court for King county with the crime of
burglary.   His trial resulted in a verdict of guilty,
upon which final judgment was rendered against him,
from which he has appealed to this court.   The only
contention here made in behalf of appellant is that the
trial court erred in overruling his motion for a directed
verdict in his favor, which motion was rested upon the
ground that the evidence given upon the trial was not
sufficient to sustain a verdict of conviction.

The burglary was committed between midnight and
two o'clock of the morning of December 31, 1922, by
someone breaking and entering into a shoe shop situ-
ated at No. 106, Madison street, in Seattle, and the
stealing therefrom of a number of pairs of shoes.
Madison street runs east and west.   The next street

[1]Reported in 216 Pac. 5.

to the north is Spring street. The second street to the north is Seneca street. First avenue and Second avenue run north and south and intersect these streets at right angles. There is an alley midway between First and Second avenues running. north and south. The shoe shop at No. 106, Madison street, is situated at the northwest corner of Madison street and this alley. The evidence is ample to show that, between midnight and two o'clock in the morning, the shop was burglarized and a number of shoes stolen therefrom by someone entering the shop through a skylight; this being accomplished by the removal of one of the large glass plates thereof, making an opening sufficiently large for a person to pass through the roof and ceiling of the shop.

At about two o'clock of the morning in question, a police officer was proceeding south upon his beat through the alley. As he neared the rear of the shoe shop, he saw a man in the alley about opposite the rear of the shop stooping over, apparently picking up something. The man, then carrying whatever he had picked up, went hurriedly south out of the alley and turned east on Madison street towards Second avenue, the officer following him. He was out of sight of the officer for a moment while passing from the alley entrance east to Second avenue. The officer found two pairs of shoes on the sidewalk between the entrance of the alley and Second avenue, apparently as if dropped there, though he did not see the man drop them there. These shoes were identified as shoes taken from the shop that night.

When the officer reached the corner of Madison street and Second avenue, he saw the man running or hurriedly proceeding north on Second avenue at a point near Spring street, and saw the man then turn

west on Spring street. The officer, then being near
the corner of Madison street and Second avenue, turned
back and ran west on Madison street and north on
First avenue. Soon after the officer turned the corner
of Madison street and First avenue and was running
north on First avenue, he saw a man run from Spring
street onto First avenue and proceed north on First
avenue. Soon after the man passed the northeast
corner of First avenue and Spring street, he ceased
running and proceeded north along First avenue, ap-
parently leisurely. Soon thereafter the officer over-
took him and arrested him on First avenue near
Seneca street. When the officer first saw the man
in the alley, he did not have opportunity to observe
him very closely; and, as we have said, he lost sight
of the man for a moment while he was on Madison
street and for a moment while he was on Second
avenue; and, also, did not see him while he was on
Spring street until he ran from Spring street onto
First avenue and proceeded north on First avenue, if
it was the same man, the appellant.

Another officer, who at the time happened to be at
the southeast corner of Madison street and First av-
enue, saw the man come out of the alley and proceed
east along Madison street to Second avenue, and then
lost sight of him as he turned the corner to the north
on Second avenue. This officer, while he plainly saw
the man at that distance, did not have opportunity to
observe him very closely. Both officers testified that,
in their best judgment, the man who was ultimately
arrested (the appellant) was the same man that was
seen in the alley by the first officer and seen coming out
of the alley by the second officer, followed by the first
officer; both officers describing the man first seen in a
very general, though not exact, manner.

Very near the place where the man was seen by the officer to stoop and pick up something, there was found a number of pairs of shoes which had been taken from the shop that night, evidently after midnight. There was some white substance on appellant's clothes which might have been accounted for by his having rubbed against a white wall. The wall of the inside of the shoe shop under the skylight, which whoever entered the skylight would probably have rubbed against, was white. Just what the substance was is not plain. While it was called paint, it evidently was of such nature that it could easily have been rubbed off and left its mark on clothing. At that place, the wall plainly showed marks of being rubbed against, as though some object or person had rubbed against it in going up or down.

We think the evidence was clearly sufficient to warrant the jury in concluding that the man who was first seen in the alley was so connected with the burglary by the evidence as to warrant the conclusion that he was, at least, one guilty person in the commission of the burglary. Indeed, it does not seem to be very seriously argued to the contrary; the argument made in behalf of the appellant being almost wholly that appellant has not been sufficiently identified as the man who was first seen in the alley, by reason of the officer not continually having sight of him until the arrest was made at First avenue and Seneca street. We think the circumstances testified to were sufficient to carry the question of appellant's identity as that man to the jury, notwithstanding the officers were not able to positively testify to such identity. We do not see our way clear to disturb the judgment. It is therefore affirmed.

MAIN, C. J., FULLERTON, and TOLMAN, JJ., concur.